On Rehearing
HAMITER, Justice.
As pointed out in our opinion on the .original hearing of this cause the defendant is charged with having “ * .* * feloniously violated Title 40, Section 962, Subsection B, of the Louisiana Revised Statutes in that he had or possessed a hypodermic syringe and needle, contrary to the form of the Statutes of the State of Louisiana, *
The mentioned subsection reads: “It is unlawful for any person, except a dealer in surgical instruments, apothecary, dentist, veterinarian or nurse, attendant or intern of a hospital, sanatorium or institution in which persons are treated for disability or disease, at any time to have or possess a hypodermic syringe or needle unless such possession be authorized by the prescription or the certificate of a physician issued within the period of one year prior thereto. Provided that this sub-section shall not be held to apply to syringes or needles for the treatment of fowl or livestock.” Attacking this provision, the defendant averred in his motion in arrest of judgment that it violates the fourteenth amendment to the Federal *409 Constitution in that (among other reasons) it is “clearly unreasonable” and deprives him “of his liberty without due process of law.”
In granting this rehearing we limited it to the question of whether LRS 40:962(B) is violative of that part of the Federal Constitution (Section 1 of the fourteenth amendment) which guarantees that no state shall “deprive any person of life, liberty, or property without due process of law.”
It is well established that the mentioned due process clause must yield to the right of the state to enact laws under its police power to secure and protect the general health, welfare, and safety of its citizens. The legislation, however, must not be arbitrary or unreasonable. Thus in 11 American Jurisprudence verbo Constitutional Law, Section 302 it is stated: “The fixed rule and basic standard by which the validity of all exercise of the police power is tested is that the police power of the state extends only to such measures as are reasonable and that all police regulations must be reasonable under all circumstances. Too much significance cannot be given to the word ‘reasonable’ in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. It has been said that the only limitation upon the exercise of the police power is that such exercise must be reasonable. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.
“ * * * A statute to be within this power must also be reasonable in its operation upon the persons whom it affects, must nqt be for the annoyance of a particular class, and must not be unduly oppressive.” These pronouncements were quoted with approval in Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248. See, also, City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239.
Further, in 11 American Jurisprudence verbo Constitutional Law, Section 304 it is said: “It is difficult, if not impossible, to lay down an all-embracing test of reasonableness by which the great variety of situations impelling legislative regulation can be measured. Thus, what constitutes a reasonable interference with private property by the exercise of the police power is a matter for which there is no certain test, but one which rests in human judgment. * * * All statutory restrictions of the use of property must be imposed upon *411 the theory that they are necessary for the safety, health, or comfort of the public. Accordingly, if a restriction or regulation is without reason or necessity, it cannot be enforced. * * *” And at page 142 of the supplement to that authority an added paragraph (to Section 303) is noted which reads : “A regulation which ostensibly seeks the protection of the public safety but which factually runs counter to the common experience of mankind is unreasonable.”
The Uniform Narcotic Drug Law was incorporated in our statutes through the adoption of Act No. 14 (Second Extra Session) of 1934. The only acts then prohibited (now LRS 40:962(A)) were the following: “Section 2. (Acts Prohibited) It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this Act.”
In 1951, by Act 30 of the First Extra Session, the Legislature added other prohibitions, including that contained in the above quoted provision here under attack— i. e., LRS 40:962(B). Obviously, this amendment, just as the original statute, was adopted for the praiseworthy purpose of suppressing the indiscriminate use of narcotics, the harmful effects of which to society are too well known to require a detailed discussion. Hence, the assailed addition is authorized, as an exercise of the state’s police power, provided that it is not unreasonable.
LRS 40:962(B), as before shown, denounces as an offense the possession of a hypodermic syringe or needle without a physician’s prescription or certificate (certain exceptions not applicable here are provided), regardless of the use for which it is possessed. Moreover, the prescription or certificate must have been issued within a year by a Louisiana doctor (LRS 40:961 (17)) and the accused carries-the burden of proving such issuance (LRS 40:979).
Inasmuch as an accused charged under LRS 40:962(B) cannot show (as a defense) that his possession of a hypodermic syringe or needle (without a Louisiana physician’s prescription) is for harmless use such statutory provision, in our opinion, is unreasonable and hence unconstitutional. Created thereby is a conclusive presumption that the possession is for an illegal purpose—an unrebuttable presumption which factually runs counter to human experience.
Thus, we are concerned here with an object that is not inherently dangerous, noxious or harmful. Rather, the article in question, as is well recognized, is widely used for numerous beneficial and helpful purposes. True, it may be employed in the illegal administering of narcotics with deleterious results; however, so may numerous other generally advantageous appliances be *413 used for ulterior motives. For example, the blow torch is frequently resorted to by burglars in the opening of iron safes. Yet, certainly it would not be reasonable for the Legislature (as a means of suppressing safe robberies) to denounce as a crime the possessing of a blow torch without, at the same time, permitting an accused possessor to show (in his defense) that his possession was for a lawful purpose.
It is important to notice too that no statute of this state prohibits the selling of a hypodermic syringe or needle. Seemingly, if it were reasonable and proper to make mere possession of such an instrument (even though for helpful purposes) a criminal offense the Legislature should also declare the article contraband and forbid the sale thereof.
With further reference to the above mentioned conclusive presumption, the United States Supreme Court appropriately observed in Manley v. State of Georgia, 279 U.S. 1, 49 S.Ct. 215, 217, 73 L.Ed. 575, as follows: “If the presumption is not unreasonable and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process of law. * * * A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is'arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. * * Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property. * * * ”
In its brief to this court the state argues: “ * * * The question at issue here is the constitutionality of the act in question * *. Suffice it to say that this statute in question is a part of the Uniform Narcotics Act which has been adopted in 45 states in the union.”
We do not concede that the adoption of a particular statute by an overwhelming majority of the states renders the law free from attack on a constitutional basis. Of course, this fact might be considered as persuasive of the statute’s constitutionality. But this matter of persuasion is without pertinence here. LRS 40:962 (B), under attack in this cause, is not contained in the Uniform Narcotic Drug Law; it was adopted by our Legislature, as before shown, some seventeen years after the enactment of the uniform law. Moreover, insofar as we are able to determine, no other state has a like provision.
Missouri did amend its uniform law so as to incorporate therein a somewhat similar provision; but the very wording of the amendment removes it from the attack made herein. Thus, under the Missouri statute (as amended) it is a crime to “pos *415 sess any apparatus,: device or instrument for the unauthorized use of narcotic drugs.” (See Uniform Laws Annotated, Volume 9B, verbo Narcotic Drugs, page 285.) Clearly under this language an accused charged with possessing a hypodermic needle may show, as a defense, that his possession of such an instrument was not for an unlawful purpose. No showing of that kind is permitted under our statute in view of the aforediscussed conclusive presumption thereby created.
Since LRS 40:962(B) is an improper and unreasonable exercise of the police power it is our province and “duty to declare that portion of the law invalid” (Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, supra) and to set aside the conviction thereunder of this defendant.
In keeping with our above announced conclusion are certain observations contained in State v. Birdsell, 232 La. 725, 95 So.2d 290, 292 (decided by a unanimous court), wherein the conviction of this defendant (on the same charge now under consideration) was set aside and he was granted a new trial. During the original trial, on an objection of the state, the accused was prohibited by the district judge from answering the question of whether he had ever used the syringe or needle for narcotics. In holding the ruling erroneous, we said: “Manifestly, the complaint by the defendant of a denial of his right to introduce evidence for the purpose of explaining his possession of these prohibited articles to an end to negate and repel the charge of guilty knowledge and illegal intent or motive is sound and meritorious.”
* * * * * *
“It is not for this Court nor was it for the lower court to say what effect the evidence if received would have produced on the jury. Had the defendant been afforded the opportunity of establishing the absence of criminal intent, and if he had done so, it would have been the duty of the jury to acquit him. * * * ”
For the reasons assigned the conviction and sentence appealed from are annulled and set aside and the defendant is ordered discharged.
PONDER, J., dissents.